UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                         Court Reporter:
Rita Sanchez                          Not Reported

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:
None Present                          None Present

**Proceedings (In Chambers):**   ORDER DENYING DEFENDANTS' MOTION TO DISMISS [38] AND GRANTING IN PART DEFENDANTS' SPECIAL MOTION TO STRIKE [37]

Before the Court are two Motions filed by Defendants Korean Broadcasting System ("KBS") and KBS America, Inc. ("KBS America"), on December 17, 2024: a Motion to Dismiss (Docket No. 38) and a Special Motion to Strike (the "Anti-SLAPP Motion") (Docket No. 37).  Plaintiffs SeeDevice Inc. ("SeeDevice") and Hoon Kim filed Oppositions to both Motions on January 13, 2025.  (Docket Nos. 55, 59). Defendants filed their Replies on January 27, 2025.  (Docket Nos. 62, 63).

The Court has read and considered the papers on the Motions and held a hearing on **March 3, 2025**.

The Motion to Dismiss is **DENIED** and the Anti-SLAPP Motion is **GRANTED** *in part*.  The Court finds that it has jurisdiction over this matter, but that Defendants may raise their *forum non conveniens* argument, if appropriate, at a later time.  The Motion to Dismiss is therefore **DENIED** *without prejudice* as to *forum non conveniens*.

The Anti-SLAPP Motion is **GRANTED** *without leave to amend* as to those statements made by or characterizing statements made by the company whistleblower. The Anti-SLAPP Motion is **DENIED** as to the statement concerning return of the government grant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

## I.    BACKGROUND

The Court summarizes the allegations in the Complaint in the light most favorable to Plaintiffs as follows:

Hoon Kim resides in California and is the Chief Executive Officer of SeeDevice. (Complaint (Docket No. 1) ¶ 6).  SeeDevice is a Delaware corporation with its principal place of business in California.  (*Id.* ¶ 5).  KBS is a Korean corporation with its principal place of business in Korea.  (*Id.* ¶ 7).  KBS America is a California corporation and subsidiary of KBS with its principal place of business in California. (*Id.* ¶ 8).

This action arises from an allegedly false and defamatory news broadcast aired by Defendants concerning Kim and, arguably, SeeDevice.  "On or about August 25, 2024, Defendant KBS and its subsidiary, Defendant KBS America, published on the KBS News YouTube channel an 'exclusive report' . . . about Plaintiff Dr. Kim and a company that is clearly identifiable as Plaintiff SeeDevice."  (*Id.* ¶ 26).  Plaintiffs take issue with this report (the "Report") in several ways.

The Report begins with the chyron headline "'Quantum' Technology that Did Not Exist 19 Years Ago . . . 'Fake Again This Time.'"  (*Id.* ¶ 29).  The Report is based in part on the account of a whistleblower at one of Kim's companies.  (*Id.* ¶ 30).  The whistleblower is quoted as saying "I'm trying to figure out some technology, but there's nothing there, as reported by KBS in 2016.  At that time, it was called nano image sensor, but it was the same.  There was no basis then and there is no basis now." (Declaration of Amy McCann Roller ("Roller Dec."), Exhibit 1 (the "Report") (Docket No. 59-17) at 1:30-42).  The Report also notes that, regarding Kim and his companies, "KBS has raised suspicions of 'technology fraud' since 2007."  (Complaint ¶ 29). Plaintiff also claims that the Report misleadingly presents the history of litigation surrounding Kim and his companies.  (*Id.* ¶¶ 29-31).

Though some efforts were undertaken by Defendants to obscure Kim's identity, the Report displayed a cover from *Global Business Leaders Magazine* on which Kim appeared.  (*Id.* ¶ 27).  The Report did not mention SeeDevice by name but displayed a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)              Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

screenshot indicating that the subject of the Report was the CEO of a company in "the
heart of Southern California," "established in 2017 by Dr. Kim," and that the company
"is making waves by developing a QMOS™ (quantum effect CMOS) SWIR image
sensor."  (*Id.* ¶ 28).

    The Report concerns a long history of litigation surrounding Kim's companies
and their putative innovations.  As alleged by Plaintiffs in the Complaint, "[d]uring the
early 2000s, Dr. Kim faced some challenges in relation to his quantum image sensor
technology . . . including baseless accusations that he engaged in technology fraud."
(*Id.* ¶ 17).  In 2009, the Seoul High Court ruled that it could not conclude that Kim's
technology was "fake."  (*Id.*).  In 2011, the Korea Evaluation Institute of Industrial
Technology nonetheless found that Kim's technology was problematic, and "ordered
the return of 9.2 billion KRW (Korean won) government grant."  (*Id.* ¶ 18).  In 2012,
the Seoul Administrative Court reversed this mandate, and no return was made.  (*Id.* ¶
19).  The Seoul Administrative Court found that "Kim did not commit research
misconduct in carrying out the project at issue" and that there was "no evidence to
support the assertion that [Korea Electronics Technology Institute] and Hoon Kim
committed fraudulent misconduct while carrying out the project at issue."  (*Id.* ¶ 20).
Thereafter, in 2017, Kim founded SeeDevice, an American company utilizing Kim's
quantum image sensor technology, including in "a monitoring device that measures
blood sugar in real time."  (*Id.* ¶¶ 22-23).

    Plaintiffs allege that based on the Seoul High Court's 2009 order and the Seoul
Administrative Court's 2012 order, the statements that Kim's companies "have raised
suspicions of 'technology fraud,'" that the technology is "fake again this time," and
that the technology "did not exist before" are demonstrably false.  (*Id.* ¶ 31).  Plaintiffs
assert that the Report is refuted entirely by the findings of those courts in 2009 and
2012.  (*Id.*).

    On the basis of the above allegations, Plaintiffs bring two causes of action for
trade libel and defamation.  (*Id.* ¶¶ 35-59).  In response, Defendants brought the
Motions.  In the Motion to Dismiss, Plaintiffs argue that the action should be dismissed
for lack of personal and subject matter jurisdiction as to both Plaintiffs and lack of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

standing as to SeeDevice, or under the doctrine of *forum non conveniens*.  (*See generally* Motion to Dismiss).  In the Anti-SLAPP Motion, Defendants argue that the statements contained in the Report are true and that Defendants did not act with actual malice.  (*See generally* Anti-SLAPP Motion).

## II.   **LEGAL STANDARD**

### A. **28 U.S.C. § 1330**

Pursuant to 28 U.S.C. § 1330, "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state."  "A 'foreign state' . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state."  28 U.S.C. § 1603(a).  "An 'agency or instrumentality of a foreign state' means any entity—(1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof . . ."  *Id.* § 1603(b)(1)-(2).

The Foreign Sovereign Immunities Act bars actions against foreign states unless "any exceptions enumerated in the Act apply."  *Argentine Republic v. Amerada Hess Shipping Co.*, 488 U.S. 428, 439 (1989).  "These exceptions include . . . commercial activities occurring in the United States or causing a direct effect in this country."  *Id.*; *see also* 28 U.S.C. § 1605(a)(2).  "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  28 U.S.C. § 1603(d).

### B. **Rule 12(b)(2)**

Rule 12(b)(2) governs dismissal for lack of personal jurisdiction.  "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see also*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)              Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

*Data Disc, Inc. v. Sys. Tech. Ass'n, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).  Because
the motions are based on written materials rather than an evidentiary hearing,
"[P]laintiff need only make a prima facie showing of jurisdictional facts."  *Sher v.
Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990).

    When considering a motion to dismiss for lack of personal jurisdiction, courts
are not confined to the plaintiff's complaint; it is appropriate to consider evidence such
as party declarations.  *See*, *e.g.*, *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp.
3d 938, 949 (N.D. Cal. 2015) ("A trial court may rule on the issue of personal
jurisdiction by 'relying on affidavits and discovery materials without holding an
evidentiary hearing'") (quoting *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d
299, 301 (9th Cir. 1986)).  The Court "may not assume the truth of allegations in a
pleading which are contradicted by affidavit, but [it] resolve[s] factual disputes in the
plaintiff's favor."  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th
Cir. 2011) (internal quotation marks and citations omitted).

    **C. Anti-SLAPP Motion**

    California's anti-SLAPP statute provides:

    A cause of action against a person arising from any act of that person in
    furtherance of the person's right of petition or free speech under the United
    States Constitution or the California Constitution in connection with a
    public issue shall be subject to a special motion to strike, unless the court
    determines that the plaintiff has established that there is a probability that
    the plaintiff will prevail on the claim.

    Cal. Code Civ. Proc. § 425.16(b)(1).  The statute is based on the California
legislature's finding that "it is in the public interest to encourage continued
participation in matters of public significance, and that this participation should not be
chilled through abuse of the judicial process."  *Id.* § 425.16(a).

    Therefore, "the anti-SLAPP statute requires a two-part analysis: (1) the
defendant must make a *prima facie* showing that the suit arises 'from an act in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)               Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

furtherance of the defendant's rights of petition or free speech'; and (2) once the
defendant makes this showing, 'the burden shifts to the plaintiff to demonstrate a
probability of prevailing on the challenged claims.'" *Roberts v. McAfee, Inc.*, 660 F.3d
1156, 1163 (9th Cir. 2011) (quoting *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590,
595 (9th Cir. 2010)).

The plaintiff's burden to demonstrate a probability of prevailing on the
challenged claims is a low bar.  *Id.*  To survive an anti-SLAPP motion to strike in
California, a plaintiff must:

> demonstrate that the complaint is both legally sufficient and supported by a
> sufficient *prima facie* showing of facts to sustain a favorable judgment if
> the evidence submitted by the plaintiff is credited.  In deciding the question
> of potential merit, the trial court considers the pleadings and evidentiary
> submissions of both the plaintiff and the defendant; though the court does
> not weigh the credibility or comparative probative strength of competing
> evidence, it should grant the motion if, as a matter of law, the defendant's
> evidence supporting the motion defeats the plaintiff's attempt to establish
> evidentiary support for the claim.

*Manufactured Home Cmtys., Inc. v. County of San Diego*, 655 F.3d 1171, 1176–77
(9th Cir. 2011) (internal alterations and quotation marks omitted).  "The plaintiff's
burden resembles the burden they would have in fending off a motion for summary
judgment." *Roberts*, 660 F.3d at 1163.

## III.   DISCUSSION

The Court begins, as it must, with the reasons offered against the Court
exercising jurisdiction over this matter.  Defendants articulate four jurisdictional
grounds it claims warrants dismissal: (1) lack of subject matter jurisdiction; (2) lack of
personal jurisdiction over KBS; (3) SeeDevice's lack of standing; and (4) *forum non
conveniens*.  (*See generally* Motion to Dismiss).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)              Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

The Court first addresses the standing and *forum non conveniens* arguments before turning to the more substantive questions of personal and subject matter jurisdiction.

### A.    **Motion to Dismiss**

#### 1. Standing

Defendant argues that SeeDevice lacks standing to pursue this action because the Report does not mention SeeDevice and in fact primarily concerns another of Kim's companies, Quantapia.  (Motion to Dismiss at 17-19).  Statements challenged for libel and defamation must reference the plaintiff in the action.  *See, e.g.*, *Golden N. Airways v. Tanana Publ'g Co.*, 218 F.2d 612, 620 (9th Cir. 1954) ("[L]ibel shall refer to a person certain and that that person be the person who claims to be libeled—the plaintiff in the action."); *Provisional Gov't of Republic of New Afrika v. Am. Broad. Cos.*, 609 F. Supp. 104, 108 (D.D.C. 1985) ("Defamation is personal; a plaintiff who alleges defamation 'must show that [the statement] was published "of and concerning" him.'" (quoting *Summerlin v. Wash. Star*, 7 Media L. Rep. 2460, 2461 (D.D.C. 1981)).

Defendant claims that the report does not mention SeeDevice.  (Motion to Dismiss at 18).  Defendant states that the information in the Report emerged from an investigation into Kim's company Quantapia, and that the following language of the report concerns Quantapia rather than SeeDevice:  "The Company's beneficial owner claims that it has attempted to attract normal investment with the development of an innovative technology called 'Quantum Image Sensor.'"  (*Id.*).  This is allegedly so because the report follows this excerpt with a reference to Quantapia: "Quantapia's internal informant also said the technology was fake."  (*Id.*).

In view of this, it appears clear that Quantapia would have standing to sue regarding the report if it so chose.  But this argument does not specifically address the reasons the report implicates SeeDevice, according to Plaintiff.  As framed in the Complaint, the report displayed a cover of *Global Business Leaders Magazine*.  (Complaint ¶ 27).  In text accompanying the image of the cover, the viewer can read the following text:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)              Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

> In the heart of Southern California, [censored] Inc. is making waves by developing a QMOS™ (quantum effect CMOS) SWIR image sensor. Established in 2017 by Dr. [censored] Kim, [censored] technology was developed to extend the range of pure CMOS (Complementary metal-oxide-semiconductor) sensors by leveraging quantum tunneling and plasmonic phenomenon.

(*Id.* ¶ 28; Report at 0:25).  This image was shown shortly (less than ten seconds) after the reporter stated that "this technology had already been investigated by KBS several times in the past and was found to have no substance."  (Report at 0:10-16).  A viewer with awareness of the industry, Kim, or the entities involved would have been able to surmise that the Report concerned Kim and Quantapia, but that Kim had also started a company utilizing similar technology in Southern California and that its technology was potentially implicated as well.

This is sufficient for SeeDevice to have standing in this action.  The applicable standard is whether the Report was "of and concerning" SeeDevice.  SeeDevice need not be mentioned by name for the Report to be "of and concerning" it.  *See, e.g.*, *Di Giorgio Fruit Corp. v. Am. Fed. of Labor & Cong. of Indus. Orgs.*, 215 Cal. App. 2d 560, 570, 30 Cal. Rptr. 350 (1963) ("Even though the corporation was not named and certain of the comments were directed to Joseph Di Giorgio, the founder, there is sufficient evidence to show that the remarks were directed to the corporation.").  The Ninth Circuit has held that, at the pleading stage, the plaintiff must only plausibly allege that the defamatory statements were of and concerning the plaintiff.  *Miller v. Sawant*, 18 F.4th 328, 336-38 (9th Cir. 2021).  The rationale for the "of and concerning" rule is "to prevent defamatory statements ***reasonably susceptible*** of special application to a given individual."  *Art of Living Found. v. Does*, No. 10-CV-05022-LHK, 2011 WL 2441898, at *6 (N.D. Cal. June 15, 2011) (emphasis in original).  That the Report was "of and concerning" SeeDevice is apparent from the face of the Complaint, which alleges that the Report caused at least one potential investor to not deal with SeeDevice.  (*See* Complaint ¶¶ 42-45).  At the pleading stage, this is enough.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                    Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

## 2.  *Forum Non Conveniens*

Defendants argue that the case should be dismissed according to the doctrine of *forum non conveniens* because Korea is a superior forum in that material witnesses are in Korea, Korea is not an inconvenient forum for Kim, witnesses may be compelled to testify in Korea, evidence is more readily accessible in Korea, and litigating in California will be costly.  (*See* Motion to Dismiss at 19-25).

Presuming the Court has jurisdiction for the reasons discussed below, the Court determines that it is inappropriate to dismiss this action under the *forum non conveniens* doctrine at this time.  Dismissing an action under *forum non conveniens* is fundamentally a matter of discretion and comity.  As the Supreme Court stated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947), "[t]he principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute."  That is, *forum non conveniens* is not, strictly speaking, an absolute bar to the exercise of jurisdiction, but a doctrine that can be called upon in the interest of justice to the parties.

Here, Defendants seek to utilize the fact of this case's litigation in California as both sword and shield.  While Defendants claim to be burdened by maintaining the matter in California, the action being sited in California also permits Defendants to utilize California's Anti-SLAPP law and Ninth Circuit case law interpreting the Anti-SLAPP law that is beneficial to Defendants.  Therefore—at least at this time—it would not be equitable to dismiss the action pursuant to *forum non conveniens*, although the Court recognizes that there is a colorable argument that litigating the action here may well be substantially more inconvenient than doing so in Korea.

## 3.  Subject Matter Jurisdiction

Plaintiffs assert that this Court has subject matter jurisdiction over the dispute under 28 U.S.C. § 1603(a)-(b), which grant original jurisdiction to district courts for actions against foreign states where those actions are not otherwise barred by the Foreign Sovereign Immunities Act.  While KBS America is a California corporation,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)          Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

the parties do not appear to dispute that KBS itself is an instrumentality of the Korean
government.  (*See* Motion to Dismiss at 14).  Accordingly, for the Court to exercise
jurisdiction, Plaintiffs must show that this action involves a statutory exception to the
Foreign Sovereign Immunities Act.  Plaintiffs have done so.

The commercial activity exception to the Foreign Sovereign Immunities Act
grants federal subject matter jurisdiction where

the action is based upon a commercial activity carried on in the United
States by a foreign state; or upon an act performed in the United States in
connection with a commercial activity of the foreign state elsewhere; or
upon an act outside the territory of the United States in connection with a
commercial activity of the foreign state elsewhere and that act causes a
direct effect in the United States[.]

28 U.S.C. § 1605(a)(2).  Defendants argue that the action undertaken by KBS—
disseminating the Report to KBS America—took place inside of Korea, meaning that
the commercial activity exception would only apply if the act was undertaken "outside
the territory of the United States in connection with a commercial activity of the
foreign state elsewhere and that act causes a direct effect in the United States."  *Id.*
That argument is well-taken.  But Defendants' arguments against the applicability of
the third prong of the commercial activity exception is less convincing.

Both sides rely on *Alpha Therapeutic Corp. v. Nippon Hoso Kyokai* (*Alpha I*),
199 F.3d 1078, 1086 (9th Cir. 1999), for its reasoning on when an action outside the
United States causes a "direct effect in the United States."  (Opposition to Motion to
Dismiss at 5-6; Reply in Support of Motion to Dismiss at 6-7).  That ruling—though
withdrawn after its issuance by stipulation of the parties (*see Alpha Therapeutic Corp.
v. Kyokai*, 237 F.3d 1007 (9th Cir. 2001))—is illustrative of how the Report caused a
"direct effect" in the United States.  Defendants accurately cite that ruling's recounting
of prior case law establishing that "[m]ere financial loss suffered in the United States
as a result of the action abroad by a foreign state does not constitute a 'direct effect'
and thus does not create subject matter jurisdiction under the FSIA."  *Alpha I*, 199 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                    Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

at 1086.  For Defendants, this means that the Court cannot have subject matter
jurisdiction because the "direct effect" complained of in the Complaint is
disparagement of Kim and SeeDevice resulting in the loss of at least one financial
investment.  (Complaint ¶¶ 42-45).  But Defendants ignore those parts of *Alpha I*
which indicate why the exercise of subject matter jurisdiction is appropriate here.

     For instance, the Ninth Circuit held in *Alpha I* that "to establish a 'direct effect'
in the United States resulting from an act abroad by a foreign state, Appellants must
establish that 'something legally significant happened in the U.S.'"  *Alpha I*, 199 F.3d
at 1086 (quoting *Gregorian v. Izvestia*, 871 F.2d 1515, 1527 (9th Cir. 1989)).  The
Ninth Circuit then upheld the district court's finding that subject matter jurisdiction
did not exist in a trade libel and slander case based on three central facts: (1) copies of the
offending broadcast were only available in the United States in pirated, unauthorized
versions; (2) the defendant never gave permission for the broadcast to be aired in the
United States, and neither was defendant asked for permission; (3) a royalty agreement
with American distributors indicated that the defendant did not approve distribution in
America of the offending broadcast.  *Id.*

     Here, the circumstances are just the opposite.  The Report is available on the
KBS News YouTube account, not solely in unauthorized form.  (Complaint ¶ 37).  And
KBS gave permission and clearly contemplated that the Report would be aired on that
platform—it apparently uploaded the video itself and distributed the Report to KBS
America for further rebroadcasts.  (*See* Motion to Dismiss at 9 ("Defendant KBS
America is a California corporation in the business of re-airing news content aired by
KBS directed at the Korean-speaking audience located in the United States.")).  These
facts—combined with the alleged facts that California residents Kim and SeeDevice
suffered disparagement and injury in California—are sufficient to find that the
commercial activity exception to the Foreign Sovereign Immunities Act is applicable.
The Court therefore has subject matter jurisdiction over this action.  *See also Yoon v.
Lee*, 433 F. Supp. 3d 18, 25 (D. Mass. 2019) (finding exercise of subject matter
jurisdiction appropriate against KBS where the plaintiff brought claims for libel and
defamation based on American re-broadcast of KBS report).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)              Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

### 4.  Personal Jurisdiction

Defendants also claim that the Court lacks personal jurisdiction over KBS.  It is undisputed that KBS's place of incorporation is Korea and its principal place of business are in Korea, rendering the exercise of general jurisdiction improper.  *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) ("The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business.").  The question, where service is made and subject matter jurisdiction is proper under the Foreign Sovereign Immunities Act, is whether the entity has sufficient minimum contacts with the United States for the exercise of personal jurisdiction to be reasonable.  *See Newpoint Fin. Corp. v. Bermuda Monetary Auth.*, 680 F. Supp. 3d 1151, 1158 (C.D. Cal. 2023) ("[W]here service is made under FSIA section 1608, the relevant area in delineating contacts is in the entire United States, not merely the forum state.") (quoting *Altmann v. Republic of Austria*, 317 F.3d 954, 969 (9th Cir. 2002)); *see also Altmann*, 317 F.3d at 970 (utilizing "minimum contacts" test).  In the minimum contacts analysis, the Court undertakes a three-part analysis to determine whether: (1) the defendant purposefully directed activities or consummated some transaction with the forum or resident, or otherwise invoked the benefits or protections of its laws; (2) the claim is one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with the notions of fair play and substantial justice, *i.e.*, it is reasonable.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Defendants argue that KBS did not direct its activities at the United States because KBS and KBS are separate entities; that KBS's YouTube account is maintained in Korea; that KBS does not publish on American cable networks or generate revenues in America; that Plaintiffs' claims do not relate to KBS's activities in America; and that the exercise of personal jurisdiction would be unreasonable as a general matter.  (*See* Motion to Dismiss at 9-12).

First, the Court finds that KBS purposefully directs activities toward the United States, including with regard to the Report.  In his Declaration, KBS America CEO Kyongkyun Shin stated that "KBS America is in the business of re-airing news content

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

aired by KBS, ***directed at the Korean-speaking audience located in the United
States***.” (Declaration of Kyongkyun Shin (Docket No. 38-9) ¶ 2).  Defendants utilize
the same language in their briefing.  (Motion to Dismiss at 9).  KBS America receives
that content from KBS:  “There is no dispute that KBS provides content to KBS
America, which then broadcasts the content in the United States.” (Reply in Support
of Motion to Dismiss at 9).  The Report was apparently disseminated in the same way.
According to Defendants, “[t]he Subject Report was based on KBS's reporters and
other employees' fact gathering, reporting and broadcasting that all occurred in
Korea.” (Motion to Dismiss at 11).  Then, the Report was rebroadcast by KBS
America—apparently for the purpose of directing its reporting at the Korean-speaking
audience located in the United States.  Both specifically with regard to the Report and
more generally, KBS has sufficient contacts with the United States because the
foreseeable result of providing news broadcasts to KBS America is to reach Korean-
language speakers in the United States as part of KBS's corporate strategy.

        Moreover, the exhibits provided by Plaintiffs show that KBS has more
significant contacts with the United States than KBS indicates.  For instance, KBS
operates KBS World, which is apparently available in the United States via Time
Warner Cable, DirecTV, Comcast, Time Warner, and Cox Cable.  (Declaration of
Hannah Menchel, Exs. 2-4 (Docket Nos. 59-3–59-5)).  Defendants counter with
Kyongkyun Shin's Declaration, which states that the above exhibits are incorrect.
(Declaration of Kyongkyun Shin ¶ 4).  Kyongkyun Shin writes that “KBS America has
contractual arrangements in place with those cable networks to air content it is
authorized to, including materials obtained from KBS as well as KBS America
produced content.”  (*Id.*).  He offers this statement to dispute the allegedly incorrect
point that “KBS publishes its programming on Cox Cable, DirecTV, and Spectrum
News.”  (*Id.*).  The distinction he attempts to draw is lost on the Court—his statement
indicates that KBS does publish content via those networks by distributing it to KBS
America, which has contractual arrangements with cable providers.  In view of all of
this, Defendants have failed to show that KBS does not purposefully direct activities at
the United States.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)            Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

The result of the second prong of the minimum contacts test is largely decided
by the first.  While Defendants raise the issue that the KBS News YouTube account is
not maintained in America, the point is essentially immaterial.  Regardless of where
the account is maintained, the claim arises out of KBS's forum-related activity—
namely, distributing its news broadcasts to KBS America for purposes of reaching the
Korean-speaking audience in America.

At the hearing, Defendants stated that as a result of the Korean diaspora, there is
a market for news in the Korean language around the world, but that KBS should not
be seen as opening itself up to jurisdiction in any nation around the world simply as a
result of these patterns of immigration.  True though this may be, it does not address
the fundamental point—KBS is subject to jurisdiction in the United States because it
purposefully directs its activities toward the United States.  By virtue of its systematic
and ongoing business in the United States, including distributing its news reports to
KBS America to ensure that Americans consume KBS broadcasts, KBS opens itself up
to the possibility that American courts will have jurisdiction over it.

As to the third prong of the minimum contacts test, exercising jurisdiction over
KBS would be reasonable.

In addressing the question of reasonableness, we consider seven factors: (1)
the extent of a defendant's purposeful interjection; (2) the burden on the
defendant in defending in the forum; (3) the extent of conflict with the
sovereignty of the defendant's state; (4) the forum state's interest in
adjudicating the dispute; (5) the most efficient judicial resolution of the
controversy; (6) the importance of the forum to the plaintiff's interest in
convenient and effective relief; and (7) the existence of an alternative
forum.

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).  While these
factors weigh in different directions, the Court finds that, on balance, the exercise of
jurisdiction would be reasonable.  First, the extent of KBS's purposeful interjection
into America is moderate.  The majority of American operations relating to KBS are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

undertaken by KBS America, which is its own distinct legal entity.  At the same time,
as discussed, KBS disseminates its broadcasts to KBS America for the distinct purpose
of reaching the Korean-speaking audience in America.  Second, the burden on KBS of
defending litigation in California is high.  Its employees are located in Korea and at
least some number of those employees are fact witnesses who are not fluent in English.
(*See* Reply in Support of Motion to Dismiss at 14-15).  Third, the Court does not know
of any reason why this matter implicates the sovereignty of Korea, weighing against
dismissal.  Fourth, the United States's interest in adjudicating the dispute is high,
because the United States has an interest in adjudicating matters in which American
residents and corporations are allegedly defamed.  Fifth, judicial resolution is likely
more efficient in the United States, where the action has already been filed and where
Defendants have availed themselves of the protections provided by California's Anti-
SLAPP law.  The sixth factor appears to weigh strongly against dismissal, because this
Court is much more likely to be a convenient forum for Plaintiffs (and KBS America)
given that they are California residents.  Seventh, Korea is an alternative forum and
KBS America would stipulate to jurisdiction there.  (Declaration of Kyongkyun Shin ¶
4).

Again, these factors weigh in both directions.  But in view of the lack of impact
on Korea's sovereignty, the United States's strong interest in adjudicating the dispute,
the efficiency of resolution in this forum, and the convenience to Plaintiffs and one of
the Defendants, the exercise of jurisdiction would likely be reasonable here.

Accordingly, the Motion to Dismiss is **DENIED**.  With regard to Defendants'
*forum non conveniens* argument, the Motion to Dismiss is **DENIED** ***without prejudice***.

## B. Anti-SLAPP Motion

At the outset, the Court notes Plaintiffs' objection that the Anti-SLAPP statute
embodied in California Code of Civil Procedure § 425.16 should not apply in federal
court.  (Opposition to Anti-SLAPP Motion at 3-4).  As Plaintiffs note, that is an issue
for appeal, and the Court must apply binding Ninth Circuit law.  Accordingly, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

Court declines to find that California's Anti-SLAPP statute is inapplicable in federal court.

As described above, "the anti-SLAPP statute requires a two-part analysis: (1) the defendant must make a *prima facie* showing that the suit arises 'from an act in furtherance of the defendant's rights of petition or free speech'; and (2) once the defendant makes this showing, 'the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.'" *Roberts*, 660 F.3d at 1163 (quoting *Mindys Cosmetics*, 611 F.3d at 595).

Defendants argue that the Report falls under the third and fourth categories of protected activity under the Anti-SLAPP statute:

> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. P. § 425.16(e)(3)-(4).  Plaintiffs do not appear to contest that the Report was made in furtherance of Defendants' rights of petition or free speech, or that the Anti-SLAPP statute otherwise protects speech of the type at issue here.  Rather, Plaintiffs focus their arguments on the second of the two-part analysis: the probability of prevailing on their claims.

Plaintiffs must put forward sufficient evidence that, if credited, would allow them to recover on their claims—the standard is similar to a motion for summary judgment.  *Roberts*, 660 F.3d at 1163.  As Plaintiffs explain, the run-of-the-mill case is not ordinarily amenable to disposition through an Anti-SLAPP Motion, because plaintiffs need not demonstrate meritoriousness to an exceedingly high degree. (Opposition to Anti-SLAPP Motion at 4-5.)  However, because the evidence shows that Defendants have little probability of prevailing on their claims as to certain statements, even if their evidence is credited, granting the Anti-SLAPP Motion in part is appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

Plaintiffs spend much of the Opposition to the Anti-SLAPP Motion on jurisdictional matters that are more properly responsive to the material in the Motion to Dismiss.  As for the Anti-SLAPP Motion itself, Plaintiffs advance three primary arguments that the Report is substantially false; that the report is not unactionable opinion; and that Defendants acted with actual malice.  (Opposition to Anti-SLAPP Motion at 5-12).

In determining whether the Report is substantially false, it is important to bear in mind those portions of the Report which are challenged in the Complaint.  To their credit, Plaintiffs lay out quite clearly the portions they challenge as false:

> The statements that Dr. Kim engaged in "technology fraud," there is "no basis" in his technology, and the technology "did not exist before," is "fake again this time," and is "false" are incorrect assertions of fact as established by the 2009 Decision and the 2012 Judgment.  Defendants, however, make no mention of the actual outcomes of the 2009 Decision or the 2012 Judgment, which refute every one of their false assertions.

(Complaint ¶ 31).  The Court is guided by the analysis in cases such as *Vogel v. Felice*, 127 Cal. App. 4th 1006, 26 Cal. Rptr. 3d 350 (2005), which stand for the proposition that "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting of the libelous charge be justified.'"  *Id.* at 1021 (quoting *Masson v. New Yorker Mag.*, 501 U.S. 496, 516-17 (1991)).  Furthermore, "substantial truth is a jury question . . . . only . . . when substantial truth is not evident to the court."  *D.A.R.E. Am. v. Rolling Stone Mag.*, 101 F. Supp. 2d 1270, 1288 (C.D. Cal. 2000).  Considering these background principles, certain phrases or assertions Plaintiffs object to are simply not false.

First, Plaintiffs take issue with "[t]he statement[] that Dr. Kim engaged in 'technology fraud.'"  (Complaint ¶ 31).  That is not precisely what the Report said.  In relevant part, the Report stated that "KBS has raised suspicions of 'technology fraud'"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                 Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

since 2007." (*Id.* ¶ 29).  As Jae Eun Shin, an attorney and employee of KBS, notes in his Declaration:

> Between 2007 and 2011, KBS aired several broadcasts concerning [Kim's] quantum or nano image sensor technology.  In 2007, a transferee of Dr. Kim's technology named Planet 82, a Korean corporation, brought suit against KBS in the Seoul Southern District Court against KBS claiming that it was harmed by KBS's report that its nano image sensor technology did not exist.  The case was dismissed, and Planet 82 voluntarily dismissed their appeal.

(Declaration of Jae Eun Shin ¶ 4).  It is therefore the case that KBS has been raising suspicions of technology fraud regarding Kim and his companies since 2007.  To the extent Plaintiffs argue that the underlying allegations of technology fraud are incorrect, that is dealt with alongside Plaintiffs' other challenged portions of the Report below.

Plaintiffs next object to the statement of the company insider that there is "no basis" in Kim's technology.  (Complaint ¶ 31).  Defendants argue in the Anti-SLAPP Motion that the statement of the whistleblower is nonactionable opinion, to which Plaintiffs object.  (*See* Anti-SLAPP Motion at 10-11; Opposition to Anti-SLAPP Motion at 7-9).  But Plaintiffs do not contradict what the Court views as the more fundamental point regarding the statements of the whistleblower:  "A publisher does not have to investigate personally, but may rely on the investigation and conclusions of reputable sources."  *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 259, 208 Cal. Rptr. 137 (1984); *see also Nadel v. Regents of Univ. of Cal.*, 28 Cal. App. 4th 1251, 1270, 34 Cal. Rptr. 2d 188 (1994) ("[T]he evidence demonstrated reliance on information from reputable sources, and no reason to doubt the accuracy of that information, which relieves a publisher of any obligation to investigate personally.").  Even if Plaintiffs are correct that the whistleblower was wrong that there is no basis in the technology, Defendants were entitled to rely on that opinion of the whistleblower in crafting the Report.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)          Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

According to the certified translation provided by Plaintiffs, the statements that
the technology "did not exist before," is "fake again this time," and is "false" appear to
be accurate characterizations by the reporter of the whistleblower's statements.  (Roller
Dec., Ex. 4).  While the whistleblower did not say verbatim any of the above, those
statements are eminently reasonable interpretations of the following words of the
whistleblower: "I'm trying to figure out some technology, but there's nothing there, as
reported by KBS in 2016.  At that time, it was called nano image sensor, but it was the
same.  There was no basis then and there is no basis now."  (Report at 1:30-42).  In the
certified translation, the phrase "did not exist before" does not actually appear, but to
the extent it is based on the headline "'Quantum' Technology that Did Not Exist 19
Years Ago . . . 'Fake Again This Time,'" that headline reflects a minor rewording of
the whistleblower's comments.  (Roller Dec., Ex. 4).  In any case, as to each of these
statements, Plaintiffs have failed to put forward evidence that KBS acted with
knowledge or reckless disregard as to the alleged falsity of these statements, as is
required to establish actual malice.  *Reed v. Gallagher*, 248 Cal. App. 4th 841, 861,
204 Cal. Rptr. 3d 178 (2016).

At the hearing, Plaintiffs objected that they have put forward a Declaration
stating that the whistleblower's statements were incorrect, which is sufficient to defeat
an Anti-SLAPP motion.  Before addressing those cases on which that Plaintiffs rely,
the Court notes that Plaintiffs' position, if taken literally, would produce absurd results.
If it were so simple to defeat an Anti-SLAPP motion as to put forward a declaration
that the allegedly defamatory material is not true, defeating an Anti-SLAPP motion
would be nearly synonymous with bringing an action for libel or defamation in the first
instance—by commencing the lawsuit to begin with, the plaintiff avers that the
offending statement is not true as an element of establishing the claim.

Moreover, the Court does not understand the cases cited by Plaintiff to stand for
that proposition.  In *Briganti v. Chow*, 42 Cal. App. 5th 504, 254 Cal. Rptr. 3d 909
(2019), the defendant published a Facebook post in which he referred to the plaintiff as
a "criminal" and a "scam artist," and alleged that she had been "indict[ed] by the U.S.
courts."  *Id.* at 507.  The court found it sufficient that the plaintiff declared that she had
not been convicted of or indicted for a crime and had not undertaken any scam.  *Id.* at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 24-07779-MWF (PDx)                Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

509-10.  Though the Court understands the import of this case and related cases, the
argument overstates the point.  The Court relies on the following guidance from
*Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 61 Cal. Rptr.
3d 29 (2007):  "We do not weigh credibility, nor do we evaluate the weight of the
evidence.  Instead, we accept as true all evidence favorable to the plaintiff and assess
the defendant's evidence only to determine ***if it defeats the plaintiff's submission as a
matter of law***."  *Id.* at 699-700 (emphasis added).  Here, unlike *Briganti*, there is
sufficient reason to find plaintiff's allegations defeated as a matter of law insofar as
they are predicated on the words spoken by the whistleblower—the Defendants were
entitled to rely on the statements of the whistleblower, regardless of whether they
turned out to be true or false, without conducting a further investigation (though they
did further investigation, as discussed below).  In *Briganti*, of course, there were no
parallel facts.  The defendant allegedly made something up and published it without
relying on any knowledgeable source.

Plaintiffs also argued at the hearing that Defendants had sufficient reason to
doubt the veracity of the whistleblower such that it was unreasonable to take them at
their word.  Plaintiffs argued (1) that Defendants should have known the statements of
the whistleblower to be false because they contradicted the findings of the Seoul
Administrative Court in its 2012 order; (2) that it was suspect that the whistleblower
wanted to remain anonymous; and (3) that the whistleblower merely claimed to be a
company insider, but this was not verified.

As to the first of these arguments, the Court does not read the 2012 order as
Plaintiffs do.  Plaintiffs appeared to represent at the hearing that the Seoul
Administrative Court found that the subject technology was not fraudulent or fake.  As
Defendants pointed out, and as appears to be reflected in the English translation of the
Seoul Administrative Court's order, the court was able to find that there was not a
sufficient finding of fraud in the research underlying the technology, not that the
technology itself was or was not fraudulent.  (*See* Complaint, Ex. A (Docket No. 6),
Attachment 4 at 32 ("[T]here is no evidence to support the assertion that the plaintiff
and Hoon Kim committed research misconduct while carrying out the project at
issue.").  The court assessed the legal sufficiency for an order forcing Kim and his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

company to return the government grant but was apparently not in a position to affirmatively state that the technology itself was reliable as a matter of law.  KBS acted reasonably in not assuming that the whistleblower was being untruthful.

As to the second argument, it is commonplace for whistleblowers to retain anonymity when reporting to journalists, prosecutors, or whomever else to whom they may report.  The use of anonymous sources in media reporting is somewhat routine and is not necessarily indicative that the source is being untruthful.  At times, a source may request anonymity because they do not want to be held responsible for the content of their statements; at other times, it may be because the source has something to lose—as when a source is reporting on the alleged misconduct of their employer.  For instance, California's Whistleblower Protection Act protects the anonymity of those who report on employer misconduct to insulate whistleblowers from retaliation.  Cal. Gov't Code § 8547, *et seq*.

Finally, the Court finds that the reporter was well-positioned to determine whether the whistleblower was telling the truth.  Plaintiffs argued at the hearing that KBS did not sufficiently verify that the whistleblower was actually an employee of Quantapia.  However, in reviewing the Declaration of Cheong Yun Kim (Docket No. 37-7), a reporter who worked on the Report, he corresponded with the informant via email, met the informant and obtained verbal statements, met with a Quantapia executive who appeared to corroborate those statements, and interviewed several other individuals with knowledge of Kim and his companies and did not apparently contradict the whistleblower's statements.  (*Id.* ¶¶ 5-6).  This appears a sufficient basis for the reporter to believe that the whistleblower's statements were reliable.

Plaintiffs also object that the Report inaccurately characterizes the litigation history surrounding Kim's technology and companies.  As alleged in the Complaint, the offending statement in the Report was the following:  "Return of the full research grant amount, 9.2 billion (KRW), has been decided for nanotechnology that turned out to be fake."  (Complaint ⁋ 29).  The Report did not mention, however, that in 2012, the Seoul Administrative Court reversed the order that Kim and his company return the grant.  (*Id.* ⁋ 19).  In Plaintiffs' conception, the statement that Kim and his company

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)              Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

were required to return the grant, without added context indicating that the order was
reversed, constituted a false statement made with actual malice, particularly because
the long history of litigation between Kim and KBS in Korea would put them on notice
of the administrative court order.

      This portion of the Report presents a closer call.  Defendants assert in the Anti-
SLAPP Motion that the statements are not false because they accurately reflect the
initial court ruling; that Defendants attempted to obtain comment from Kim and
Quantapia and informed viewers of this; that KBS issued a follow-up print article
informing readers that the initial ruling was reversed; and that Plaintiffs' allegations of
actual malice are boilerplate.  (Anti-SLAPP Motion at 13-14).  Important to these
arguments and unmentioned in the Complaint is the fact that, on the day after the
Report was broadcast, KBS published an online print version of the Report that
explored the topics covered in greater detail.  (Declaration of Cheong Yun Kim ("Kim
Dec.") ¶ 8; Kim Dec., Ex. A).

      The Court is persuaded by Plaintiffs' argument that the Report was substantially
false to the extent it did not mention the subsequent reversal.  "The ultimate question is
whether a reasonable trier of fact could conclude that the published statements imply a
provably false factual assertion."  *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 902, 17
Cal. Rptr. 3d 497 (2004).  In *Wilbanks*, for instance, the court found that a statement
that "a California viator . . . won a judgment against Wilbanks" was misleadingly false
because it omitted the key fact that the judgment was obtained in small claims court.
*Id.* at 903.

      That a judgment was entered against plaintiffs in the small claims court
certainly shows that a viator had a grievance against plaintiffs, but it does
not carry the same suggestion of malfeasance that attends a report of a
judgment entered on a fully contested matter in the trial court.  By omitting
the forum, therefore, Wolk allowed readers to assume the worst, when it is
possible that plaintiffs simply decided not to defend the matter, irrespective
of its merits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

*Id.*

While the situation presented here is not identical, the *Wilbanks* decision is persuasive.  Here, too, the omission of material facts regarding the litigation was likely to present viewers of the Report with a false impression—that Kim and his company had been ordered to and had in fact returned a 9.2 billion KRW grant.  In short, as in *Wilbanks*, KBS allowed viewers to inaccurately assume the worst.  The Court cannot say that this is a "minor" inaccuracy.  *Vogel v. Felice*, 127 Cal. App. 4th at 1021. Though Defendants argue that they accurately quoted prior court records in the Report, that is insufficient where Defendants arguably used the accurate record citations to paint an inaccurate and misleading picture.  *See Smith v. Maldonado*, 72 Cal. App. 4th 637, 650, 85 Cal. Rptr. 2d 397 (1999) ("The [defamatory] editorial at issue in *Kapellas* did not simply report true facts on the public record; it ***used*** the facts to draw arguably defamatory inferences and implications about the plaintiff. . . . [T]he defamatory innuendo in *Kapellas* arose from explicit editorial comment and rhetoric based on reported facts.") (emphasis in original) (citing *Kapellas v. Kofman*, 1 Cal. 3d 20, 81 Cal. Rptr. 360 (1969)).

Having found that this aspect of the Report is substantially false, the Court addresses Defendants' arguments relating to actual malice and this aspect of the Report.  The Court has not found—and Defendants have not provided—any authority suggesting that providing the subjects of a substantially false report the opportunity to comment on the report precludes a finding of actual malice.  At the same time, however, the Court views the request for comment and KBS's practice of informing viewers of that request as at least ***some*** evidence indicating that Defendants did not operate with reckless disregard as to the falsity of their statement.  Where, as here, Plaintiffs have put forward severable colorable allegations that Defendants knew that the initial order that Kim and his company return the grant funds was reversed (*see, e.g.*, Opposition to Anti-SLAPP Motion at 10), the request for comment is insufficient to eliminate a triable issue of fact regarding actual malice under a summary judgment-like standard.  As Plaintiffs suggest, actual knowledge of falsity in advance of making a statement is powerful evidence of actual malice.  *Harris v. City of Seattle*, 152 F. App'x 565, 568 (9th Cir. 2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)              Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

Defendants next argue that, to the extent the initial Report was false, the online
print version of the Report contained additional material correcting the Report that
operated as a retraction.  (Anti-SLAPP Motion at 13-14).  The online print Report
featured the following language not present in the Report:

> The administrative court later decided to cancel the decision the return
> KRW 9.2 billion to the Korean government, stating that the researcher's
> 'scientific misconduct' must be proven before sanctions can be imposed on
> the conducting institution, and hence it did not go all the way to the actual
> return of the money to the government.

(Kim Dec., Ex. A at 7).  This retraction was made on August 26, 2024, the day after
the Report aired (*id.* at 1), though Plaintiffs claim they sent a request for retraction on
September 3, 2024, and did not receive a response (Opposition to Anti-SLAPP Motion
at 11).  Plaintiffs do not appear to attach this request as an exhibit, so it is unclear what
more Plaintiffs requested that was not provided in this initial retraction.

Although the parties do not brief the issue, under California law, a publisher
who publishes a "sufficient retraction[] gains immunity from liability for general or
punitive damages, remaining responsible only for any special damages suffered by the
defamed plaintiff."  *Twin Coast Newspapers, Inc. v. Superior Court*, 208 Cal. App. 3d
656, 658, 256 Cal. Rptr. 310 (1989).  The retraction must be published in "substantially
as conspicuous a manner" as the original statement, which is a question of fact.  Cal.
Civ. Code § 48a(b); *see also Pierce v. San Jose Mercury News*, 214 Cal. App. 3d 1626,
1633, 263 Cal. Rptr. 410 (1989) (finding that sufficiency of retraction is ordinarily a
question of fact for the jury).  Notably, and persuasively for purposes of this litigation,
the retraction statute indicates that a sufficient retraction is to be made in the same
format as the allegedly defamatory statement.  Cal. Civ. Code § 48a(b) ("If a correction
is demanded within 20 days and is not published or broadcast in substantially as
conspicuous a manner *in the same* daily or weekly news publication, or *on the same*
broadcasting station as were the statements claimed to be libelous . . . .") (emphasis
added).

CIVIL MINUTES—GENERAL                                                    24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                    Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

While Defendants do not argue insufficiency of the retraction demand as a rationale for there being a limitation on Plaintiffs' damages, the above observations are instructive regarding the retraction's relationship to actual malice.  Simply put, Defendants did not publish the retraction in a manner that would have been sufficient under law to limit Plaintiffs' damages to special damages, because the form of the retraction (online print) is incongruous with the form of the original material (video report posted to YouTube).  The Court has no evidence regarding the relative reach of the Report and the retraction and is unwilling to speculate regarding whether the retraction reached substantially the same numbers of consumers as did the original Report.  But because in the retraction demand context such questions are ordinarily ones for a jury, it appears inappropriate to determine as a matter of law that an incongruous retraction could defeat Plaintiffs' allegation of actual malice, particularly where the Plaintiffs here allege that Defendants were not just reckless but were on notice of the actual falsity of their initial statement.

Defendants also argue that "Plaintiffs rely on conclusory boilerplate assertions that are legally insufficient to plead actual malice." (Anti-SLAPP Motion at 14).  For the reasons discussed previously, Defendants have sufficiently pled that Plaintiffs acted with actual malice.  Plaintiffs allege that Defendants knew the falsity of the statements when made.  (Complaint ¶¶ 41, 53).  This allegation is made more plausible by the underlying allegation that KBS's reporting led to the 2011 order mandating the return of the government grant.  (*Id.* ¶ 20).  Drawing all reasonable inferences in favor of the Plaintiffs, a jury could find that KBS was aware of the falsity of the statement regarding the 2011 order given its role in bringing about that litigation.

Finally, Defendants argue that Plaintiffs have failed to sufficiently allege their damages because they "must plead and prove that they actually suffered some pecuniary loss as a result of the false statement.  It is not enough to show a general decline in business; the plaintiff must identify specific customers and transactions lost due to the libel." (Anti-SLAPP Motion at 16 (citing *Muddy Waters, LLC v. Superior Court*, 62 Cal. App. 5th 905, 925, 277 Cal. Rptr. 3d 204 (2021))).  The Court agrees with Plaintiffs that they have adequately done so.  The Complaint states that as a result of the Report, a contemplated transaction is at risk of being withdrawn.  (Complaint ¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)              Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

33).  Later-filed documents have provided further clarity regarding this allegation.  In
his Sealed Declaration, Kim states that an investor, TQE, a subsidiary of TMRW E,
had negotiated a proposed transaction under which TQE would invest $505 million
dollars in return for 60% of SeeDevice's equity and ownership of SeeDevice's patents.
(Sealed Declaration of Hoon Kim (Docket No. 54-1) ℙ 4).  Kim negotiated an
Intellectual Property Contribution Agreement with TMRW E as part of the overall
deal, under which Kim would receive $100 million and 5% of TMRW E.  (*Id.* ℙ 6).
The Report was issued while the Committee on Foreign Investment in the United
States ("CFIUS") conducted a review of the proposed transaction.  (*Id.* ℙℙ 7-10).
Allegedly as a result of the Report, TMRW E encountered difficulties in securing
external funding for the deal, and later canceled the transaction entirely.  (*Id.* ℙℙ 9-10).

       Defendant essentially argues in the Reply that the failure to secure an investment
in an untested prototype is unsurprising and fails to establish that the Report actually
caused the damage.  However, the sealed Exhibit A to Kim's Sealed Declaration is
TQE/TMRW E's responses to questions posed by CFIUS concerning the effect of the
Report on the possibility of its investment.  (*See generally* Sealed Declaration of Hoon
Kim, Ex. A).  The responses to CFIUS's questions reflect that the parties contemplated
an alternative structure for the transaction following the liquidity difficulties caused by
the Report, and thus that it was possible for the transaction to have gone through
despite the Report.

       However, there is insufficient evidence to conclude why the transaction did not
go through after the parties contemplated an alternative transaction structure and
whether that option was truly feasible.  (*See generally id.*).  In view of Kim's
Declaration and the lack of contrary evidence, the Court finds that Plaintiffs have
sufficiently alleged damages under a summary judgment-like standard.  If credited, the
damages here are specific, and not the result of a general downturn in business.

       Accordingly, the Anti-SLAPP Motion is **GRANTED *in part***.  The Anti-SLAPP
Motion is **DENIED** as to the statement that Kim was required to return the 9.2 billion
KRW grant, because a reasonable jury could find that the statement was false and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                    Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

made with actual malice.  The Anti-SLAPP Motion is **GRANTED** as to all other
statements, because they are not substantially false.

## IV.  **LEAVE TO AMEND**

Rule 15 requires that leave to amend "be freely given when justice so requires."
Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied with extreme liberality."
*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  The
Supreme Court identified five factors a court should consider when deciding whether
to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing
party, (4) futility of amendment, and (5) whether the plaintiff has previously amended
its complaint.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Of these, "the
consideration of prejudice to the opposing party carries the greatest weight."  *Sonoma
Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013)
(quoting *Eminence Cap., LLC*, 316 F.3d at 1052); *see also Sharkey v. O'Neal*, 778 F.3d
767, 774 (9th Cir. 2015) (indicating a court should explain reasons for denying leave to
amend); *Parsittie v. Schneider Logistics, Inc.*, 859 F. App'x 106, 107 (9th Cir. 2021)
(unpublished) (same).

Defendants suggest in the Anti-SLAPP Motion that "[b]ecause the statutory
intent is to provide a quick, inexpensive method of dismissing SLAPP suits, leave to
amend is generally improper."  (Anti-SLAPP Motion at 4 (citing *Simmons v. Allstate
Ins. Co.*, 92 Cal. App. 4th 1068, 1073, 112 Cal. Rptr. 2d 397 (2001))).  However, as the
Ninth Circuit has found, "granting a defendant's anti-SLAPP motion to strike a
plaintiff's initial complaint without granting the plaintiff leave to amend would directly
collide with [Federal Rule of Civil Procedure 15(a)]'s policy favoring liberal
amendment."  *Verizon Del., Inc. v. Covad Comm'cns Co.*, 377 F.3d 1081, 1091 (9th
Cir. 2004).  Although the Court notes the statutory purpose of quickly eliminating
meritless claims which may chill protected First Amendment speech, as the Ninth
Circuit found in *Verizon Delaware*, "the purpose of the anti-SLAPP statute, the early
dismissal of meritless claims, would still be served if plaintiffs eliminated the
offending claims from their original complaint.  If the offending claims remain in the
first amended complaint, the anti-SLAPP remedies remain available to defendants."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 24-07779-MWF (PDx)                    Date:  March 20, 2025
Title:  SeeDevice Inc. et al. v. Korean Broadcasting System et al.

*Id.*  To the extent *Verizon Delaware* has been distinguished, it has been in cases where defendants have sought to dismiss an amended complaint.  *See Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (finding Oregon's anti-SLAPP statute requiring dismissal without prejudice to not conflict with the federal rules where the defendant sought dismissal of first amended complaint without leave to amend).

However, Defendants are also correct that the liberal amendment standard contemplates dismissal without leave to amend in cases where leave to amend would be futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  Here, the Court rules that amendment with regard to the statements dismissed in response to the Anti-SLAPP Motion would be futile.  Defendants were entitled to rely upon the statements of the whistleblower, and other challenged statements were merely minor recharacterizations of the words the whistleblower said.  There is no reason to believe Plaintiffs could amend the Complaint in a fashion that would show that those statements were false.

V.    **CONCLUSION**

The Motion to Dismiss is **DENIED** as to all the jurisdictional arguments, but is **DENIED** *without prejudice* as to Defendants' *forum non conveniens* argument, which is non-jurisdictional.

The Anti-SLAPP Motion is **GRANTED** *in part*.  It is **GRANTED** *without leave to amend* as to the statements of the whistleblower and those statements recharacterizing the words of the whistleblower.  It is **DENIED** as to the statement concerning the return of the government grant.

Defendants shall file an Answer or respond to Complaint by no later than **March 14, 2025**.  A motion based on *forum non conveniens* may be filed pursuant to the Local Rules.

IT IS SO ORDERED.